UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| DR. GREG WILLIAMS AND<br>RACHEL WILLIAMS | CIVIL ACTION |
| VERSUS | No. 06-4829 |
| AUTO CLUB FAMILY<br>INSURANCE COMPANY | SECTION T |

## ORDER AND REASONS

Before the Court are two motions brought by the defendant, Auto Club Insurance Company. Defendant urges a Motion in Limine to Exclude Evidence [Rec. Doc. No. 35] and a Motion for Partial Summary Judgment. [Rec. Doc. No. 36]. As this case has been continued and deadlines have been extended, the Court finds that the Motion in Limine is premature and thus is denied. The motion may be taken up at a later date. The Court will now address the Motion for Partial Summary Judgment. [Rec. Doc. No. 36].

I.  BACKGROUND

The plaintiffs, Dr. Greg Williams and Rachel Williams, resided at 2027 Easter Lane on the Westbank of the Mississippi River in New Orleans, Louisiana. They lived there until prior to Hurricane Katrina when they evacuated to Houston, Texas. In Houston, the plaintiffs took up

residence at Magnolia Hotels for a short period of time before moving into an apartment at the Mansions of Shadowbriar. They resided in this apartment until they moved back to New Orleans around Thanksgiving, 2005.

The damages to their home, sustained as a result of the storm, are allegedly in excess of $80,000. The plaintiffs had previously obtained an insurance policy from Auto Club Family Insurance Company ("ACFIC"). ACFIC has paid the plaintiffs approximately $3,000 to cover homeowner damage and $2,000 for loss of use due to wind and rain.

Plaintiffs brought claims for breach of obligation to provide assurances of performance, breach of obligation to provide for loss of occupancy, breach of contract and bad faith, and penalty for breach of duties and failure to properly handle and pay claims. Defendant has filed a motion for partial summary judgment to dismiss the claims for loss of use and failure to provide assurance of performance.

## II.   SUMMARY JUDGMENT STANDARD

The Federal Rules of Civil Procedure provide that summary judgment should be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *Stults v. Conoco, Inc.*, 76 F.3d 651,

655-56 (5th Cir. 1996) (citing *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 912-13 (5th Cir.1992) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), *cert. denied*, 506 U.S. 832 (1992)).  When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.  The nonmoving party must come forward with "specific facts showing that there is a *genuine issue for trial*." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis supplied); *Tubacex, Inc. v. M/V RISAN*, 45 F.3d 951, 954 (5th Cir. 1995).

Thus, where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial." *Matsushita Elec. Indus. Co.*, 475 U.S. at 588.  Finally, the Court notes that substantive law determines the materiality of facts and only "facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

### III. ANALYSIS

#### A. Additional Living Expenses

Defendant urges this motion for summary judgment arguing that the plaintiffs are owed no additional "loss of use" or "additional living expenses" under the terms of their policy. Defendant argues that the plaintiffs' home was not rendered unfit to live in by Hurricane Katrina due to a covered loss.  Further, defendant argues that even if the residence was unfit to live in for a period of time after the hurricane, by September 30, 2005 at latest, the residence was fit to live in, and the additional living expenses already paid to the plaintiffs exceeds the amount of living

expenses to which they would be entitled for that period of time.

Additional Living Expense is available under the policy for the reasonable increase in living expenses necessary to maintain one's normal standard of living when a direct physical loss makes the residence premises uninhabitable. Rec. Doc. No. 36-5, p. 13. The policy then places a limit on this payment, noting that the payment will be for the shortest time required to repair or replace the damage. *Id.* Further, the contract provides that where an insured is prohibited from use of their premises because of civil authority under certain circumstances, it will pay Additional Living Expenses for up to two weeks. *Id.*

Defendant argues that Hurricane Katrina did not render the plaintiffs' home "unfit to live in," and therefore plaintiffs should not be entitled to Additional Living Expenses. Defendant notes the affidavit of the insurance adjuster, Tim Seikel, who inspected the house on behalf of the defendant on September 14, 2005. His affidavit states that the roof was intact, as were the walls, windows and doors. *See* Rec. Doc. No. 36-9, p. 2. Also attached to the defendant's motion is the affidavit an engineer who inspected the house in March 2007, who stated that it was his opinion that the residence was not made uninhabitable after Hurricane Katrina. *See* Rec. Doc. No. 36-11, p. 3.

When asked in deposition whether the plaintiffs made any repairs to the home before these inspections, plaintiff answered that the only repairs that had been made were to the garage. In answers to interrogatories, when asked to describe repairs made to the home, who made those repairs and how much those repairs cost, plaintiffs responded that "Plaintiffs have made minor repairs themselves. The A/C drain has been repaired." *See* Rec. Doc. No. 36-11, p. 20.

In order to defeat this properly supported motion, the plaintiffs have to come forward with "specific facts showing that there is a *genuine issue for trial*." *Matsushita Elec. Indus. Co.*, 475 U.S. at 588. (emphasis added). Plaintiffs argue in opposition to this motion that discovery is incomplete in the case, and that there are genuine issues of material fact. Plaintiffs aver that whether or not the "premises were livable" is a question of fact. Plaintiffs' counsel notes that when Mr. Williams returned to his home after the storm, it was without power, damaged and unsafe. Plaintiffs claim "damages to the kitchen, the master bedroom and the master bath" and "the master bath is not usable as of this date and has not been used since Katrina...[therefore] [t]hese are living spaces that are not fit for habitation." Rec. Doc. No. 50, p. 5.

The Court finds that, as a matter of law, the Williams' home was not rendered uninhabitable by the damages it sustained in the hurricane. The Williams' returned in November 2005 to live in their home, and have lived there, making little to no repairs to the home since returning. There is some dispute as to the amount of damage sustained inside the home and whether proper inspection to the home's interior was made. However, by definition, to be un-inhabitable (or unfit to live in), the home would have to have been unable to be lived in by the plaintiffs. The plaintiffs do not deny that they have lived in their home since a few months after the storm without making repairs to the damage that was sustained by the home during the hurricane. While plaintiffs argue that certain "living spaces" are not "fit for habitation," such as the master bath that has not been used since the storm, this does not render "the part of the residence premises where you reside not fit to live in", in theory or in fact, as the

house has been inhabited without repairs since the plaintiffs returned in November 2005. Rec. Doc. No. 36-5, p. 13.

The plaintiffs' own deposition testimony states that there was no reason that they could not move back into their home once the electricity had been restored. *See* Rec. Doc. No. 36, Exh. 2. The following are excerpts from the deposition of the plaintiff, Mr. Williams, regarding the condition of his home in New Orleans in October 2005.

> Q: By the time you moved into the Mansion at Shadowbriar, back in New
>
> Orleans, the home on Easter Lane had electricity?
>
> A: Yes.
>
> Q: There was no reason you couldn't live in that home?
>
> A. Yes.

*Id.* at p. 23, Deposition page 90-91.

As such, the Court finds that as a matter of law, the plaintiffs home was not uninhabitable after the time at which the electricity was restored to the home. As such, the defendant owed no duty for Additional Living expenses for the time period after which the home was no longer uninhabitable.

The next issue presented to the Court is whether the plaintiffs can recover Additional Living Expenses during the period of time after the storm when the house was uninhabitable due to a lack of electricity. Plaintiffs "do not dispute the fact that the interruption of electrical service is not a covered loss obligating defendant to pay increased living expenses under the policy." Rec. Doc. No. 50, p. 5. As plaintiffs have no genuine dispute with the defendant over

this issue, plaintiffs are not entitled to additional living expenses during the time after the hurricane in which the house itself was habitable but for the loss of electricity.

The Court passes no judgment on the extent of the damage to the home, the veracity of the witnesses or estimates of damage, all of which are addressed and disputed in this motion. The Court's ruling is merely limited to a declaration that the damage to the plaintiff's home was not to a degree that would render it uninhabitable, and thus the plaintiffs are not entitled to any Additional Living Expenses above what it has already received from its insurer.

**B.     Assurance of Performance**

Defendant argues that neither the policy at issue nor Louisiana law requires a casualty insurance company to provide "assurance of performance." As such, the defendant requests that the Court dismiss the portions of the complaint that pertain to "assurance of performance." As the opposition to this motion provides no mention of any countervailing facts or law pertaining to the "assurance of performance" claims and does not rebut the properly supported motion, these claims are dismissed.

Accordingly,

**IT IS ORDERED** the Defendant's Motion for Partial Summary Judgment is **GRANTED** as to Additional Living Expenses and **GRANTED** as to Assurance of Performance.

**IT IS FURTHER ORDERED** that the defendant's Motion in Limine is **DENIED**.

New Orleans, Louisiana, this 22ND  day of August 2007.

_____

**UNITED STATES DISTRICT JUDGE
G. THOMAS PORTEOUS, JR.**